UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DELANATOR STEVENS,

                      Plaintiff,

        -v-

WALGREEN CO.,

                      Defendant.

21-CV-10603 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Defendant Walgreen Co. sells lidocaine patches. The front packaging of the product states that the "[s]tay-put flexible patch is easy to apply & remove" or that the patch offers "[t]argeted pain relief in a stay-put flexible patch." The back label directs customers to "[u]se one patch for up to 12 hours." Some varieties describe the patch as "maximum strength." Plaintiff Delanator Stevens alleges, among other things, that the patches do not adhere to bodies for 12 hours; are not flexible enough to withstand regular activities like walking, stretching, and sleeping; and do not provide the maximum amount of lidocaine available in patch form.

Plaintiff brings claims under New York's Warranty Act, for breach of express warranty, N.Y. U.C.C. § 2-313, breach of implied warranty of merchantability, N.Y. U.C.C. § 2-314, and breach of implied warranty of fitness, N.Y. U.C.C. § 2-315; under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; and under New York G.B.L. § 349 and § 350. Defendant moves to dismiss the complaint in its entirety for failure to state a claim. That motion is mostly denied.

**I.    Background**

    **A.    Factual Background**

This case concerns four lidocaine patches sold by Walgreen's: the "Pain Relieving Lidocaine Patch (5 patches)"; "Pain Relieving Lidocaine Patch (6 patches)"; "Pain Relieving

Lidocaine Patches"; and "Cool n' Heat Lidocaine Patch." (*See* Dkt. No. 1 ("Compl.") ¶ 1 n.1.) The front packaging looks like this:



As relevant, the front packaging represents the patch as a "[s]tay-put flexible patch" that "is easy to apply & remove" or a product that offers "[t]argeted pain relief in a stay-put flexible patch." (*See* Compl. ¶ 10.) Two of the products represent the patch as "maximum strength." The back packaging of the product lists the active ingredient as "[l]idocaine 4.0%." (*See* Dkt. No. 1-1 at 1-5.) It also includes directions. The directions state that users should "[u]se one patch for up to 12 hours." (*See* Dkt. No. 1-1 at 1-5.)

The complaint alleges that, from the description of the patch as "stay-put flexible" and the directions to "[u]se one patch for up to 12 hours," Plaintiff believed that the patches "would continuously adhere to their bodies up to 12 hours"; "were sufficiently flexible to withstand regular activities (such as walking, stretching, and sleeping) for someone who is suffering from sore muscles"; and "would continuously relieve pain by providing a 4% lidocaine dose throughout the specified amount of time represented therein." (*See* Compl. ¶ 11.) Plaintiff alleges that the patches "systematically fail to adhere to its consumers' bodies up to 12 hours"; "are insufficiently flexible to withstand regular activities (such as walking, stretching, and

sleeping);" and "fail to continuously relieve pain . . . due to their partial or complete detachment." (*See* Compl. ¶ 12.) Some of Plaintiff's patches even "peeled off his body within an hour or two after he properly applied them." (*See* Compl. ¶ 8.)

Further, the complaint alleges that, from the description of some patches as "maximum strength," Plaintiff believed that those patches "contain[ed] and deliver[ed] the maximum amount of lidocaine available in patch form"; and that they were "superior, or at least equivalent, in efficacy and results to other over-the-counter and/or prescription-strength lidocaine patches." (*See* Compl. ¶ 11.) Plaintiff alleges that the patches "do not provide the maximum amount of lidocaine available in patch form" and "are not superior, or at least equivalent, in efficacy and results to other over-the-counter and/or prescription-strength lidocaine patches." (Compl. ¶ 12.)

### B.     Procedural History

Plaintiff filed this action on December 11, 2021. (*See* Compl. at 25.) He asserts that Defendant violated New York's General Business Law's prohibition against "[d]eceptive acts or practices" and "[f]alse advertising" in "the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law. §§ 349, 350. (*See* Compl. ¶¶ 92-109.) The complaint also asserts claims under New York's Warranty Act, for breach of express warranty, N.Y. U.C.C. § 2-313, breach of implied warranty of merchantability, N.Y. U.C.C. § 2-314, and breach of implied warranty of fitness, N.Y. U.C.C. § 2-315. (*See* Compl. ¶¶ 39-77.) Finally, the complaint asserts a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. (*See* Compl. ¶¶ 77-92.) Among other things, Plaintiff seeks compensatory damages; punitive damages; an order of restitution; and injunctive relief. (*See* Compl. at 25.)

Defendant moves to dismiss the complaint primarily for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. No. 4.)

**II.     Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

**III.    Discussion**

Defendant moves to dismiss Plaintiff's claims on the grounds that Plaintiff has not plausibly alleged that reasonable consumers would be misled by the packaging of Walgreen's lidocaine patches.  Except as otherwise noted, at this early stage, Plaintiff's claims survive. Plaintiff has plausibly alleged that a consumer would be misled by the packaging's representations that the patches were "stay-put flexible" together with its directions to "[u]se one patch for up to 12 hours."  Plaintiff has also plausibly alleged that a consumer would be misled by the packaging's representations that some patches were "maximum strength."[1]

---

[1] Defendant also moves to dismiss Plaintiff's request for injunctive relief under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. (*See* Dkt. No. 4.)  Plaintiff has abandoned his claims for injunctive relief. (*See* Dkt. No. 11 at 5 n.2.)  Accordingly, that relief is dismissed.

4

A.      "Stay-Put Flexible" and "Use One Patch for up to 12 Hours"

1.      New York's General Business Law Claim

The complaint plausibly alleges that Defendant violated Sections 349 and 350 of New York's General Business Law when it sold "stay-put flexible" lidocaine patches with instructions to "[u]se one patch for up to 12 hours."  Section 349 of the GBL provides a cause of action for any person injured by "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  N.Y. Gen. Bus. Law. § 349(a), (h).  "'Deceptive acts' are acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).  Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce," and is analyzed under the same "reasonable consumer" standard as Section 349.  *Id.* (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).  To assert a claim under either section, "a plaintiff must allege that the defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

Defendants move to dismiss Plaintiff's "stay-put" claims only on the grounds that Walgreen's packaging was not misleading.  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Chufen Chen*, 954 F.3d at 501, but the "inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage," *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 96 (S.D.N.Y. 2021).  The complaint raises a plausible inference that a reasonable consumer would be misled by Walgreen's packaging here.  The packaging describes its lidocaine patches as "stay-put flexible" and instructs users to "[u]se one patch for up to 12 hours."  In

5

context, a reasonable consumer would plausibly expect to be able to use the patch for 12 hours. That means that, as the complaint notes, a reasonable consumer would expect that the patches would "adhere" for 12 hours; "withstand regular activities"; and "provid[e] a . . . dose" during that time. (Compl. ¶ 11.) As alleged, it is plausible that the lidocaine patch does not do so. *Cf. Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC*, 21-CV-1280 (N.D. Cal. Feb. 24, 2022); (Dkt. No. 14-1) (denying motion to dismiss because "a reasonable consumer could understand 'apply for 8 hours' and 'use up to 12 hours' to mean that the [lidocaine patch] products 'continuously adhere to the body and continuously relieve pain for the specified amount of time'").

Separately, the complaint asserts that Defendant deceived consumers by "omitting that the Lidocaine Patches are prone to even greater detachment when consumers engage in certain activities: such as walking, stretching, or sleeping." (Compl. ¶ 96.) Defendants argue that these allegations do not state a claim because the complaint "does not allege that Walgreens *alone* possessed information about when the [p]atches may be prone to greater detachment," and "it seems to be fairly well known that adhesiveness varies for individual use of adhesive patches." (Dkt. No. 5 at 15.) But "[j]ustifiable reliance by the plaintiff is not an element of [a] statutory claim" under Section 349 or 350 of New York's General Business Law, and in any event, resolving that question at this stage would be premature. *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 88-89 (S.D.N.Y. 2020) (quoting *Koch v. Acker, Merral & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012)); *see Poppiti v. United Indus. Corp.*, No. 19-CV-2028, 2020 WL 1433642, at *4 (E.D. Mo. Mar. 24, 2020) ("[D]efendants' argument that vaguely suggests it is at least theoretically possible for plaintiffs—in the internet age—to discern the truth for themselves goes far beyond what the reasonable opportunity test actually requires."). Because it is plausible that

a reasonable consumer would be misled by Defendant's labels and omissions relating to Walgreen's "stay-put" patches for use "up to 12 hours," Plaintiff's GBL claims survive.

### 2. Express Warranty Claim

The complaint also plausibly alleges that Defendant violated the Uniform Commercial Code's express warranty provision when it sold "stay-put flexible" lidocaine patches with instructions to "[u]se one patch for up to 12 hours." That provision, as adopted by New York, states that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. Law § 2-313(a). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. Law § 2-313(1)(b). To state a claim for breach of an express warranty, a complaint must allege: "(1) the existence of a material statement amount to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*, No. 22-CV-57, 2022 WL 2905368, at *12 (S.D.N.Y. July 22, 2022) (quoting *Housey v. Procter & Gamble Co.*, No. 21-CV-2286, 2022 WL 874731, at *3 (S.D.N.Y. Mar. 24, 2022)).

Defendant moves to dismiss Plaintiff's express warranty claim only on the ground that describing the patch as "stay-put flexible" does "not amount to an affirmation of fact or promise by Walgreens." (Dkt. No. 5 at 18.) But it is "well-settled that a description of goods at issue can create an express warranty so long as it was part of the basis of the parties' bargain." *Hart v. BHH, LLC*, No. 15-CV-4804, 2017 WL 2912519, at *4 (S.D.N.Y. July 7, 2017). The packaging describes the patches as "stay-put flexible." Defendant does not argue that the description is puffery. And the complaint alleges that the description formed the basis of Plaintiff's bargain, as

Plaintiff "would not have purchased his [l]idocaine [p]atches on the same terms had he known those representations and warranties were false." (Compl. ¶ 8.) Accordingly, Plaintiff has stated a claim that Defendant did not sell "stay-put flexible" patches. *Cf. Bourbia*, 375 F. Supp. 3d at 464 (denying motion to dismiss express warranty claim from label stating that product provided "effective protection against mosquitos" and "repels insects for up to 3-4 hours").

Likewise, Defendant moves to dismiss the express warranty claim on the ground that an instruction to "[u]se one patch for up to 12 hours" is not an affirmation of fact or promise. But that argument parses the packaging too finely. The packaging describes the lidocaine patches as "stay-put flexible." "When determining whether an express warranty has been made, courts consider the context of the statement, including, among other things, the content on the label." *Gonzalez v. Costco Wholesale Corp.*, No. 16-CV-2590, 2018 WL 4783962, at *9 (E.D.N.Y. Sept. 29, 2018). The label includes an instruction to "[u]se one patch for up to 12 hours." Together, the description of the patches as "stay-put flexible" and the instruction to "[u]se one patch for up to 12 hours" at least plausibly reflects an affirmation that the lidocaine patches can ordinarily stay put for 12 hours. (*See* Dkt. No. 11 at 21.) Plaintiff has stated an express warranty claim that Defendant did not sell lidocaine patches that could stay put for that long. *Cf. Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC*, 21-CV-1280 (Feb. 24, 2022); (Dkt. No. 14-1) (denying motion to dismiss where Defendant did "not cite a single case where the court dismissed a claim solely because it involved directions for use"). Accordingly, Plaintiff's express warranty claims survive as well.[2]

---

[2] Defendant also moves to dismiss Plaintiff's implied warranty claim of fitness for a particular purpose. (*See* Dkt. No. 5 at 19.) Plaintiff has abandoned that claim. (*See* Dkt. No. 11 at 5 n.2.) Accordingly, Plaintiff's implied warranty claim of fitness for a particular purpose is dismissed.

8

### 3. Magnuson-Moss Warranty Act Claim

The complaint plausibly alleges that Defendant violated the Magnuson-Moss Warranty Act when it sold "stay-put flexible" lidocaine patches with instructions to "[u]se one patch for up to 12 hours." The MMWA provides a cause of action to "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1).

Defendant moves to dismiss Plaintiff's MMWA claims only on the ground that Plaintiff does not plead the existence of any "written warranty." (*See* Dkt. No. 5 at 20-21.) The MMWA defines a "written warranty" as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship . . . will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Again, it is plausible that the description of the patches as "stay-put flexible" and the instruction to "[u]se one patch for up to 12 hours" together reflect an affirmation that the lidocaine patches will ordinarily stay put for 12 hours. Accordingly, for the same reasons, Plaintiff's Magnuson-Moss Warranty Act claims relating to these labels survive as well. *Cf. Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019) (denying motion to dismiss MMWA claims where product's "label includes application instructions that indicate that the product will 'meet a specified level of performance over a specified period of time'").

### B. "Maximum Strength"

#### 1. New York's General Business Law Claims

The complaint plausibly alleges that Defendant violated Sections 349 and 350 of New York's General Business Law when it described some lidocaine patches as "maximum strength."

9

Defendants move to dismiss Plaintiff's "maximum strength" GBL claims only on the grounds that Walgreen's packaging was not misleading. (*See* Dkt. No. 5 at 15.) But it is plausible that a reasonable consumer would be misled by the packaging. First, it is plausible that a reasonable consumer would understand the patches to contain and deliver the maximum amount of lidocaine available in patch form, and the complaint raises a plausible inference that that is not the case, because there are prescription-strength lidocaine patches that contain 5% lidocaine. (*See* Compl. ¶ 23.) Defendant argues that prescription-strength patches are not proper comparators, but such fact-intensive disputes are not appropriate for resolution at this time. *See Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC*, 21-CV-1280 (June 16, 2022) (Dkt. No. 15-1.).[3]

Second, it is plausible that a reasonable consumer would understand Walgreen's "maximum strength" lidocaine patches to have more lidocaine than its non-maximum-strength lidocaine patches, and the complaint raises a plausible inference that that is not the case. The complaint alleges that "both [p]atches contain 360 milligrams of lidocaine per patch." (Compl. ¶ 25.) "[I]t is at least plausible that a reasonable consumer would not expect that a product is fairly represented as 'Maximum Strength,' and is properly priced higher than its 'Regular Strength' cousin, if the consumer gets more of its active ingredients only by consuming more of it." *Woodhams v. Pfizer, Inc.*, No. 18-CV-3990, 2021 WL 5304309, at *3 (S.D.N.Y. Nov. 15, 2021) (quoting *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 755 (N.D. Ill. 2018)).

---

[3] In the alternative, the complaint alleges that the "maximum strength" label is misleading because a reasonable consumer would understand the product to be "superior, or at least equivalent, in efficacy and results to other over-the-counter and/or prescription-strength lidocaine patches," but the patches "are not superior, or at least equivalent, in efficacy and results to other over-the-counter and/or prescription-strength lidocaine patches." (Compl. ¶¶ 11-12.) Such allegations do not state a claim because, as Defendant argues, "the phrase 'Maximum Strength' on the label plainly refers to the strength of the medication, not efficacy or results." (Dkt. No. 5 at 9.)

### 2. Express Warranty Claim

The complaint also plausibly alleges that Defendant violated the express warranty provision when it sold "maximum strength" lidocaine patches. Defendant moves to dismiss this claim only on the ground that the "maximum strength" description was not false or misleading when made. (*See* Dkt. No. 5 at 18.) Because it is plausible that the description was misleading, Plaintiff's express warranty claims survive as well. *Cf. Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 111 (S.D.N.Y. 2021) ("For the same reasons Plaintiffs have plausibly alleged that the Products could mislead a reasonable consumer in violation of GBL §§ 349-50, Plaintiffs have plausibly alleged that Defendant breached an express warranty.").

### 3. Magnuson-Moss Warranty Act Claim

Finally, the complaint does not plausibly allege that Defendant violated the Magnuson-Moss Warranty Act when it sold "maximum strength" lidocaine patches. As Defendant argues, the phrase "maximum strength" is not "partnered with any language regarding a specified time period." (Dkt. No. 5 at 22.) The MMWA only governs guarantees that a product "will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Plaintiff cannot rely on the "maximum strength" description to make out an MMWA claim.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED in part and DENIED in part.

The Clerk of Court is directed to close the motion at Docket Number 4.

SO ORDERED.

Dated: August 24, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge